IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

LESLIE A. P.,[1]

        Plaintiff,

        v.

Commissioner of Social Security,[2]

        Defendant.

Case No.  6:17-cv-00132-AA
**OPINION AND ORDER**

---

AIKEN, District Judge:

       Plaintiff Leslie A. P. brings this action pursuant to the Social Security Act ("Act"), 42

U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the

Commissioner of Social Security ("Commissioner").  The Commissioner denied plaintiff's

---

     [1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case.  Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

     [2] Nancy A. Berryhill's term as the Acting Commissioner of the Social Security Administration ended on November 17, 2017, and a new Commissioner has not been appointed. The official title of the head of the Social Security Administration ("SSA") is the "Commissioner of Social Security." 42 U.S.C. § 902(a)(1). A "public officer who sues or is sued in an official capacity may be designated by official title rather than by name." Fed. R. Civ. P. 17(d). This Court, therefore, refers to Defendant only as Commissioner of Social Security.

application for Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

## BACKGROUND

Plaintiff initially filed an application for benefits in January, 2009, alleging disability beginning January 1, 1993, which was denied initially on June 4, 2009, and upon reconsideration on June 18, 2010. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). That hearing was held on November 9, 2011, and the initial denial was upheld. The ALJ found that plaintiff was limited to sedentary work with the need to alternate sitting and standing as necessary. On May 2, 2013, plaintiff reapplied for SSI. She alleged disability beginning April 17, 2013, due to scoliosis of the spine, anxiety, post-traumatic stress disorder, a possible borderline personality disorder, and depression. Plaintiff's second SSI application was denied initially and upon reconsideration. Plaintiff then requested a hearing before an ALJ. A hearing was held on November 10, 2015. At the hearing, plaintiff was represented by an attorney, and a Vocation Expert ("VE') testified. On December 31, 2015, the ALJ issued a decision denying plaintiff's claim for benefits. After the Appeals Council denied review, plaintiff filed the present complaint before this Court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and quotation marks omitted). The court must weigh "both the

evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since the application date, April 17, 2013. 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *id.* §§ 416.920(a)(4)(i), (b). At step two, the ALJ found that plaintiff had the following severe impairments as of the alleged onset date: scoliosis of the spine secondary to fusion surgery in childhood, anxiety, depression, posttraumatic stress disorder ("PTSD"), and adjustment disorder. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *id.* §§ 416.920(a)(4)(ii), (c).

At step three, the ALJ determined that plaintiff's impairments, whether considered singly or in combination, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *id.* §§ 416.920(a)(4)(iii), (d).

Before moving on to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e); *id.* § 416.920(e). The ALJ found that plaintiff could "perform light work as defined in 20 CFR § 416.967(b), except that she can frequently climb ramps and stairs, and occasionally climb ladders and scaffolds; she can occasionally balance, stoop, kneel, crouch, or crawl; she can never work at unprotected heights or be exposed to moving mechanical parts, and can occasionally be exposed to vibration; she is limited to performing simple routine tasks, and making simple work-related decisions; she is limited to occasional interaction with supervisors, coworkers, and the public." Tr. at 21. At step four, the ALJ concluded that plaintiff is unable to perform any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f); *id.* §§ 416.920(a)(4)(iv), (f). At step five, however, the ALJ found that plaintiff could perform work in the national economy; specifically, plaintiff could work as a garment sorter, photocopying machine operator, or laundry sorter. 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1).

Accordingly, the ALJ found plaintiff not disabled and denied her applications for benefits.

## DISCUSSION

Plaintiff contends the ALJ committed reversible error at steps three and five in the five-step analysis. Plaintiff argues that the ALJ erred in failing to give preclusive effect to the prior ALJ's finding that plaintiff was limited to sedentary work with the need to alternate sitting and standing, in evaluating medical evidence, in evaluating lay witness testimony, in failing to develop the record regarding plaintiff's alleged cognitive limitations, in formulating the RFC, and in meeting her burden of proving that plaintiff retains the ability to perform work in the national economy.

I.      *Preclusive Effect of Prior ALJ's Findings*

An ALJ's "findings concerning the claimant's residual functional capacity [...] are entitled to some res judicata consideration in subsequent proceedings". *Chavez v. Brown*, 844 F.2d 691, 694 (9th Cir. 1988). "[S]uch findings cannot be reconsidered by a subsequent judge absent new information not presented to the first judge". *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008).

Plaintiff avers that the findings of the ALJ in her previous SSI application that she is limited to sedentary work with the need to alternate sitting and standing should be given preclusive effect to the findings of the ALJ in her current application for SSI, specifically the finding that plaintiff is capable of performing light work. Plaintiff argues that the failure of the current ALJ to discuss what effect, if any, res judicata should have on his findings means that the subsequent RFC analysis was fatally flawed. Plaintiff contends that, because of this failure, she should either be awarded immediate benefits, or, that the case should be remanded for a reformulation of the RFC in light of the supposed preclusive effect of the previous ALJ's findings.

However, plaintiff herself admits that there is new and material evidence presented to the agency, in the form of plaintiff's new diagnoses of PTSD and anxiety, which the ALJ accepted and classified as "severe". Tr. at 20. Moreover, since the time of the previous ALJ's findings in 2011, plaintiff worked thirty-two hours per week for eight months at a job classified as light work during the relevant period. A state medical examiner also found her capable of light work. Moreover, plaintiff reported regularly engaging in activity such as collecting cans, walking for transportation, and riding her bike. Finally, plaintiff's medical record shows an improvement in the symptoms that led to the previous ALJ's findings. All of these facts were discussed by the

current ALJ in his written decision. This new and material evidence was not available to the previous ALJ. Thus res judicata does not apply, and it was appropriate for the ALJ to reformulate plaintiff's RFC.

Accordingly, the ALJ did not commit harmful legal error when disregarding the previous ALJ's formulation of the RFC and reformulating plaintiff's RFC.

## II. Evaluation of Medical Evidence

The ALJ is responsible for resolving conflicts and ambiguities in the medical testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). If there is medical evidence in conflict, the conclusions of the ALJ are given greater deference. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject an uncontradicted opinion of a treating or examining doctor if the ALJ provides clear and convincing reasons, supported by substantial evidence. *Ghanim v. Colvin*, 763 F.3d 1154, 1161, 1162 (9th Cir. 2014). If the ALJ finds an opinion to be contradicted, the ALJ must then provide specific and legitimate reasons, supported by substantial evidence for their finding. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

Plaintiff claims that the ALJ did not give proper consideration to the medical evidence provided by Dr. Burnard Pearce, Ph.D. and Ruth Ralph, MA. Plaintiff claims the ALJ did not properly interpret plaintiff's mental status evaluations. Plaintiff also claims that the ALJ was mistaken to decide that plaintiff's waxing and waning of symptoms was a sign that she was not disabled. Lastly, plaintiff asserts that the ALJ erred by failing to apply the appropriate factors in determining the extent to which each opinion is credited.

/ / /

/ / /

*a. Medical Opinion of Dr. Pearce*

Plaintiff avers that the ALJ erred in discounting the opinion of treating psychologist, Dr. Pearce. Specifically, plaintiff contends that the ALJ failed to provide legally sufficient bases supported by substantial evidence in the record to discount Dr. Pearce's opinion.

The ALJ is responsible for resolving all conflicts and ambiguities in the record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). An ALJ can reject the contradicted opinion of a treating doctor, such as Dr. Pearce, for specific and legitimate reasons supported by substantial evidence. *Bayliss*, 427 F.3d at 1216.

Here, the ALJ gave Dr. Pearce's opinion little weight because of the discrepancy between plaintiff's job during the treating period and Dr. Pearce's report. The ALJ found that plaintiff's economic activities, including interacting with the general public as a receptionist, dealing with the residents of the home for the aged where she was employed, and dealing with emergency situations when they arose, were inconsistent with the opinion evidence of Dr. Pearce. Dr. Pearce opined that plaintiff "could have virtually no contact with the public". Tr. at 22. The ALJ otherwise accepted Dr. Pearce's conclusions. Further, the ALJ found that plaintiff's "overall psychological treatment history is consistent with the moderate impairments found by Dr. Pearce, or implied by Dr. Peterson", showing that the ALJ gave due consideration to Dr. Pearce's medical opinion as weighed against the whole of the record. Tr. at 23.

The ALJ cited specific and legitimate reasons, supported by substantial evidence, for giving the opinion of Dr. Pearce partial weight. Thus, the ALJ committed no error.

/ / /

/ / /

/ / /

### b.  Opinion of Ruth Ralph, MA

Plaintiff claims that the ALJ erred in rejecting the non-medical opinion of Ruth Ralph, MA. Plaintiff accepts that Ms. Ralph is not an acceptable medical source, but plaintiff claims that Ms. Ralph's opinion should be treated as a lay opinion.

An ALJ may discount or reject a non-medical opinion or lay witness testimony by providing "reasons that are germane to each witness". *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Here, the ALJ did not give significant weight to the report submitted by Ms. Ralph. The ALJ explained in detail the multiple reasons he had for not crediting the opinion of Ms. Ralph. Namely he opined that her opinion conflicted with acceptable medical sources such as Dr. Pearce, was inconsistent with plaintiff's daily activities, there was not supported by ongoing treatment notes, and was inconsistent with the record as whole including here own examination note. Plaintiff objects to the failure of the ALJ to attempt to obtain the treatment notes from Ms. Ralph or her employer under 20 C.F.R. 416. 913(b)(6), but, even if it were required in this case, I find this to be harmless error in light of the other multiple germane reasons outlined by the ALJ for rejecting Ms. Ralph's lay opinion.

The ALJ cited germane and specific reasons for rejecting the opinion of Ruth Ralph, MA. Thus, the ALJ committed no error here.

### III.    The ALJ's Duty to Develop the Record Regarding Plaintiff's Cognitive Limitations

Plaintiff takes issue with the failure of the ALJ to develop the record regarding plaintiff's cognitive limitation. Plaintiff points to several references in the record to her problems with cognition and intelligence, including from Dr. Boyd, Ms. Nicole Miller, MA, QMHP, and Heather Tonga, PA. Dr. Boyd opined that plaintiff was intellectually slow, Ms. Miller noted unclear cognitive function, and Ms. Tonga diagnosed plaintiff with cognitive dysfunction. The

ALJ generally agreed with these opinions, finding plaintiff possessing marked limitations in concentration, persistence, and pace, as well as "subjectively impaired cognitive function". Tr. at 21. Plaintiff objects to the ALJ's failure to order a neuropsychological consultative examination, including IQ testing to assess the full extent of plaintiff's intellectual limitations.

First, I note that "the Commissioner 'has broad latitude in ordering a consultative examination." *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (quoting *Diaz v. Sec'y of Health and Human Servs.*, 898 F.2d 774, 778 (10th Cir. 1990)). Plaintiffs do not have "an affirmative right to have a consultative examination performed by a chosen specialist." *Id.*

Plaintiff rightfully points out that "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry[,]'" in the case before me, the evidence is not ambiguous. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). All sources of opinion are in agreement that plaintiff suffers from some level of cognitive and intellectual impairment. This does not mean that the ALJ was prevented from making a determination. Plaintiff completed high school, attended a year of college, and worked 32 hours a week at a job which demanded more than the limitations found by the ALJ in her present RFC.

The ALJ developed the record to the extent necessary to make a determination, and any ambiguity in the record exists because of the discrepancy between plaintiff's economic activities and her limitations. The ALJ committed no error.

IV.     *The ALJ's Assessment of Lay Witness Evidence*

An ALJ may discount or reject a non-medical opinion or lay witness testimony by providing "reasons that are germane to each witness". *Molina v. Astrue*, 674 F.3d at 1114 (internal quotation marks omitted); *see also Dodrill*, 12 F.3d at 919. If the ALJ rejects lay

testimony, the ALJ does not need to cite to the specific record as long as "arguably germane reasons" for dismissal of the testimony are noted, even if the ALJ does "not clearly link his determination to those reasons." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

Plaintiff argues that the ALJ improperly weighted Mr. L. D.'s non-medical opinion. L. D. is plaintiff's husband. Plaintiff asserts that L. D.'s opinion was improperly weighted because the ALJ based his weighting determination on the contradiction between L. D.'s Function Report and plaintiff's daily activities, including both economic and social activities.

The statement of a lay witness regarding a claimant's symptoms and how her impairments affect her ability to work "is competent evidence and therefore cannot be disregarded without comment." *Tobeler v. Colvin*, 749 F.3d 830, 833-834 (9th Cir. 2014). The plaintiff is correct that if the ALJ wishes to discount the testimony of a lay witness, he must give reasons that are germane to the witness." *Lewis*, at 511. Plaintiff seeks to apply to this case the principle that an attempt to work during a claimed period of disability is insufficient to impugn a claimant's credibility. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1037-38 (9th Cir. 2007). In that case, the claimant had attempted to work and physically could not, pending a knee replacement. In the instant case, the ALJ gave little weight to L. D.'s non-medical opinion because it was contradicted by plaintiff activities of daily living and economic activity, which included working 32 hours per week for eight months as a receptionist.

It is enough that the ALJ give specific and germane reasons for rejecting the non-medical opinion of lay witnesses, and the ALJ did so here. It is not the place of this Court to act as the fact-finder in SSA cases. Thus, the ALJ committed no error in giving little weight to L. D.'s lay witness opinion.

/ / /

### V. *Plaintiff's Residual Functional Capacity*

The RFC is the most a person can do, despite his or her physical or mental impairments. 20 C.F.R. §§ 404.1545, 416.945. In formulating the RFC, the ALJ must consider all medically determinable impairments, including those that are not "severe," and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. *Id.*; SSR 96-8p, 1996 WL 374184. In determining a claimant's RFC, the ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson*, at 1174. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Plaintiff argues that the ALJ erred in failing to limit her to sedentary work with the need to alternate sitting and standing, as the ALJ in her previous application for SSI had done. As discussed above, the ALJ was not required to adopt the previous ALJ's findings, including the previous ALJ's assessment of plaintiff's RFC.

Next, plaintiff argues that the ALJ erred in failing to include the finding of a limitation of marked difficulties in concentration, persistence, and pace in the RFC. However, the ALJ did discuss this limitation in the RFC analysis section of his opinion. Tr. at 25. Additionally, the ALJ did properly limit plaintiff to simple tasks, accounting for moderate difficulties in concentration, persistence, and pace in the RFC analysis. *Id.*

Plaintiff also states, incorrectly, that the ALJ did not include evidence in the RFC that she has difficulty getting along with other people. However, the ALJ stated numerous times that plaintiff should be limited to only occasional interaction with coworkers and the public. Tr. at 21, 22, 25, 29.

The ALJ properly accounted for plaintiff's limitations in formulating the RFC. The ALJ was not required to adopt the findings of the ALJ in plaintiff's previous application for SSI. Thus, the ALJ committed no error here.

## VI.    Plaintiff's Ability to Perform Other Work in the National Economy

The burden of proof shifts at step five to the Commissioner to "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [her] limitations". *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g); 20 C.F.R. §§ 404.1566, 416.966. In so doing, the ALJ must consider the claimant's RFC as applied to the Dictionary of Occupational Titles ("DOT"), and the following "vocational factors:" age, education, and work experience. *Id.*

Plaintiff asserts that the ALJ did not meet the burden of proof to show that plaintiff is capable of performing work in the national economy. Plaintiff first argues that the ALJ's hypothetical was defective in that it failed to limit plaintiff to sedentary work with the need to alternate sitting and standing, as found by the previous ALJ in plaintiff's previous application for SSI. For the reasons discussed *supra*, I do not find plaintiff's argument persuasive, and the ALJ did not commit error in failing to adopt the previous ALJ's findings with regards to plaintiff's limitations.

Plaintiff also argues that the findings of the ALJ regarding plaintiff's tangential and marked limitations in concentration, persistence, and pace, along with her difficulties in getting along with others precludes plaintiff from competitive work in the general labor market. I find no error in the ALJ's holding that plaintiff is capable of performing light work such as garment sorter, photocopying machine operator, or laundry sorter.

## CONCLUSION

The Commissioner's decision is AFFIRMED. Accordingly, this case is DISMISSED.

IT IS SO ORDERED.

Dated this 21st day of June 2018.

_____

Ann Aiken
United States District Judge